Robert R. Parker, Jr.
OSB #216437
111 SE Fifth Avenue
Suite 3150
Portland, OR 97204
503-444-3417
robert@robertparkerlawoffices.com

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA

MARVA KING,

    Plaintiff,

vs.

TYLER PERRY, in his individual and representative capacity, TYLER PERRY STUDIOS, LLC, (a Georgia Limited Liability Company), ARTHUR PRIMUS, in his individual and representative capacity, JOHN and JANE DOE, 1-25, ABC CORP 1-25,

    Defendants.

Civil Action No.:

COMPLAINT

## JURISDICTION:

1. Jurisdiction in this matter is premised on 28 USC 1332 as the parties are of diverse citizenship and the amount in controversy is more than $75,000.

## VENUE:

2. Venue in this matter is premised on 28 USC 1391(b).

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 1

## PARTIES:

3. Plaintiff, Marva King is a resident of Los Angeles County, California.

4. Defendant Tyler Perry, is, upon information and belief, a resident of the State of Georgia and can be served with the Summons and Complaint at 541 Tenth Street, #172, Atlanta, Georgia 30318 or wherever he may be found.

5. Defendant Tyler Perry Studios, LLC, is, upon information and belief, a corporate entity organized and existing pursuant to the laws of the State of Georgia and can be served with the Summons and Complaint by service upon its Registered Agent, CT Corporation System whose address is 289 S. Culver St., Lawrenceville, GA 30046.

6. Defendant Arthur Primus, is, upon information and belief, a citizen of the State of Texas but also serves in an executive capacity at defendant Tyler Perry Studios and thus may be served the Summons and Complaint at 541 Tenth St., #172, Atlanta, Georgia 30318 or wherever he may be found.

7. Defendants John and Jane DOE 1-25 are, upon information and belief, individuals whose true identities are not presently known to the Plaintiff but are believed to have been involved with or on behalf of the other named defendants in committing or causing to be committed the acts complained of herein giving rise to the causes of actions presented against the defendants herein and are therefore sued in their fictional capacity. The true identities and roles of participation in the events complained of herein will be made known to this court by way of an amended complaint when same is ascertained by the Plaintiff.

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 2

8. Defendants ABC Corp. 1-25 are, upon information and belief, corporate entities whose true identity is not presently known to the Plaintiff but who are believed to have been involved with or on behalf of the other named defendants in committing or causing to be committed the acts complained of herein giving rise to the causes of action presented against the defendants herein and are therefore sued in their fictional capacity. The true identities and roles of participation in the events complained of herein will be made known to this court by way of an amended complaint when same is ascertained by the Plaintiff.

## COMMON NUCLEUS OF OPERATIVE FACTS:

9. As of the drafting and filing of this Complaint, as currently stated on the world wide web, is the following statement: "Before it was a movie, it was a (CONSISTANTLY SOLD OUT) theatrical phenomenon!" (When Helen (**MARVA KING**) learns that her husband is leaving). See https://trakt.tv/movies/tyler-perry-s-diary-of-a-mad-black-woman-the-play-2002

10. Marva King is an exceptional American Singer/Vocalist, songwriter, and producer. Marva's Exceptional Vocal Timbre has set her apart from all others in the industry. For more than 3 decades, Marva King has established herself as the go-to, *"Premier Featured/Back-Up* Vocalist" for "the titans of the music industry", including but not limited to Diana Ross, Stevie wonder, Melissa Manchester, Michael Jackson, Prince, Janet Jackson, KD Lang, Elton John, Julio, Iglesias, Lionel Richie, Bette Midler, Phil Collins, Whitney Houston, Quincy Jones, Luther Vandross, Earth Wind & Fire, Herb

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 3

Alpert, The Manhattan Transfer, and David Foster just to name a few. Additionally, Marva King is most known for her starring role in the 75 plus million dollar-grossing DVD, *"Diary of a Mad Black Woman"*, the production which launched the massive career of Tyler Perry to which *"Marva King created her own unforgettable comedic dialogue"* within the wildly successful world-wide Stage Play Production, *"Diary of a Mad Black Woman"*.

11. Plaintiff entered into a contract with defendants to perform in defendant Tyler Perry's stage play, "Diary of a Mad Black Woman" ("the Play") as Helen McCarter (see Exhibit "A" attached hereto and incorporated herein by reference).

12. The Contract sets forth the nature, scope of work/performance, the amount of compensation, the terms and conditions of Plaintiff's performances and exclusions and prohibitions relating to the commercial exploitation of Plaintiff's image, likeness, voice and collaborative creative contributions by defendants.

13. During the performance of the Play, defendant's, contrary to their original contractual obligations set forth in Exhibit "A", decided to "film the Play" which required the execution of a new contract between the parties, which would contain the new additional terms and conditions, which was promised to be forthcoming.

14. Production of the Play was halted in large part due to the "Primus Promise" of the defendant's constant assurances that "an additional contract for the filming and release of Plaintiff's character, voice, collaborative creative contributions, likeness & image was forthcoming". Defendant's filming & release of Plaintiff's character, voice,

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 4

collaborative creative contributions, likeness & image for purposes inconsistent with the terms and conditions that the parties had originally agreed to.

15. Upon information and belief, defendant Arthur Primus, on behalf of and with the active consent and ratification of defendant Tyler Perry, sought to induce the Plaintiff by having her sign a Memorandum of Intent which is attached hereto and incorporated herein by reference as Exhibit "B").

16. Exhibit "B" specifically provides that a final contractual agreement would be presented to the Plaintiff for her execution which was to include rights to residual royalties in addition to other benefits that were not included in the original stage play performance contract set forth in Exhibit "A".

17. As a result of Plaintiff's execution of the Memorandum of Intent, the stage play was able to resume "post preparation" scheduled by defendants.

18. Despite Plaintif preceding in good faith on the reliance upon the "Primus Promise" of the delivery of a final contract comprised of "Back-End Royalty Payments" terms and conditions promised by defendants, Plaintif found herself making repeated requests to defendants to produce said final contract which defendants failed to produce.

19. Therefore, no such authorization for the commercial exploitation of Plaintiff's image, likeness, voice and collaborative creative contributions were neither granted nor ever conveyed to defendants for commercial release and exploitation.

20. Defendant's improper commercial exploitation of Plaintiff's image, likeness, voice and collaborative creative contributions is not permitted by law.

21. Since, defendants, without Plaintiff's consent, used and continues to use Plaintiff's image, likeness, voice and collaborative creative contributions and voice in the commercial exploitation of same on network television, cable television, movie streaming services and other platforms including but not limited to advertisements and commercials to further promote defendants' businesses to Plaintiff's continuing detriment.

22. Upon information and belief, defendants have gained extraordinary pecuniary benefit and gain from the unauthorized usage of Plaintiff's image, likeness, voice and collaborative creative contributions as portrayed in the stage play and unauthorized film version of Diary of a Mad Black Woman (the stage play) in further advertisement of and benefit to defendants' business interests.

23. Defendants, by their unauthorized use of Plaintiff's image, likeness, voice, collaborative creative contributions as portrayed in the stage play and unauthorized and filmed version of same, for its business and corporate interests, have impermissibly invaded Plaintiff's rights of publicity and privacy.

24. The inappropriate actions of defendants have caused a continuous stream of attention which was uninvited and for which Plaintiff was not compensated by defendants.

25. Additionally, Plaintiff suffered commercial damage to her image, likeness, voice and collaborative creative contributions for the loss of payment of any licensing opportunities (including but not limited to Plaintiff's branded merchandise and

music/recording projects) that would have existed for Plaintiff, had the final contract, as promised by Plaintiff been presented. As such no terms and conditions could have been agreed to by Plaintiff.

26. Plaintiff, on numerous occasions asked defendants to cease usage of her image, likeness, voice and collaborative creative contributions without her authorization and defendants simply ignored her.

27. Upon information and belief, defendant Tyler Perry and others presently unknown to Plaintiff orchestrated a blacklist rumor campaign that permeated Plaintiff's working environment causing it to become exceptionally hostile resulting in irreparable damage which Plaintiff continues to feel the adverse effect thereof.

28. Defendants persist in the unauthorized commercial exploitation of Plaintiff's image, likeness, voice and collaborative creative contributions on numerous cable and streaming, and various platforms including but not limited to most recently, BET Plus, as recently as March 19, 2024, to Plaintiff's continued detriment.

## COUNT I.
## UNLAWFUL APPROPRIATION OF RIGHT OF PUBLICITY
## COMMON LAW:

Plaintiff repeats, re-alleges and incorporates herein by reference paragraphs 1-28 set forth herein above as if repeated here verbatim and further complains of the defendants herein as follows:

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 7

29. Defendants Tyler Perry, Tyler Perry Studios LLC, Arthur Primus and other defendants whose identities are presently unknown, used Plaintiff's image, likeness, voice collaborative creative contributions without her permission, authorization or consent.

30. Said Defendants commercially exploited Plaintiff's image, likeness, voice, and collaborative creative contributions for profit without Plaintiff's permission, authorization or consent.

31. Plaintiff has been severely damaged thereby and has further sustained damages to her reputation and development of her professional career for which defendant's improper commercial exploitation is the proximate cause thereof.

## COUNT II.

### UNAUTHORIZED COMMERICAL USAGE NAME, IMAGE, VOICE

### SIGNATURE PHOTOGRAPH or LIKENESS

### STATUTORY VIOLATIONS Cal. Code Section 3344 & 3344.1

Plaintiff repeats, re-alleges and incorporates herein by reference paragraphs 1-31 set forth herein above as if repeated here verbatim and further complains of the defendants herein as follows:

32. In addition to the foregoing common law cause of action, the impermissible commercial exploitation of Plaintiff's name, image, likeness, voice, collaborative creative contributions, signature, photograph and/or likeness in violation of California Civil Code Sections 3344 and 3344.1.

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 8

33. Upon information and belief, Defendants have also fraudulently created documents to thwart Plaintiff's ability to properly prosecute this action by falsely attaching or attempting to attach Plaintiff's signature to a fake document created by Defendants to suggest that Plaintiff signed a certain document which Defendants purport gave them the right to commercially exploit the Plaintiff's name, image, voice, collaborative creative contributions, signature, photograph and/or likeness.

34. Said mendacious attempts by the Defendants are false as Plaintiff never signed any such document as Defendants are wanting to assert nor has Plaintiff ever given permission, authorization or consent whatsoever, to Defendants to commercially exploit any aspect of her personality, voice, signature, image or likeness.

## COUNT III
## FRAUDULENT SPOILATION OF EVIDENCE

Plaintiff repeats, re-alleges and incorporates herein by reference paragraphs 1-34 set forth herein above as if repeated here verbatim and further complains of the defendants herein as follows:

35. The probability of litigation involving the Plaintiff was well known to defendants. The defendants were all aware that legal action would ensue from their actions.

36. The defendants both willfully destroyed evidence and/or fraudulently created documents designed to disrupt the proper presentation of Plaintiff's case.

37. That the fraudulent actions of the defendants have the potential to disrupt Plaintiff's case.

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 9

38. That Plaintiff has sustained damage proximately caused by the wrongful actions of defendants, upon information and belief, creating fraudulent documents through the unlawful affixation of Plaintiff's signature to fake documents which were created by the defendants specifically to thwart Plaintiff's right of recovery for their unauthorized commercial exploitation of Plaintiff's image, likeness, voice and collaborative creative contributions.

## COUNT IV
### BREACH OF CONTRACT:

Plaintiff repeats, re-alleges and incorporates herein by reference paragraphs 1-38 set forth herein above as if repeated here verbatim and further complains of the defendants herein as follows:

39. Plaintiff and Defendants entered an agreement for her to perform in the stage play Diary of a Mad Black Woman.

40. The contract entered between the parties is set forth herein as Exhibit "A" and incorporated herein by reference.

41. That the Defendants breached the contract with Plaintiff by filming and releasing the stage play for commercial release and exploitation, in violation of the provisions set forth in Exhibit "A" in addition to other aspects of contractual breaches such as failing to allow Plaintiff to utilize music and/or songs that she was to perform during the stage play Presentation and the sale of pre-determined souvenirs, mementos and music projects that would have served to enhance, enrich, and further Plaintiff's music and her ascent into the acting industry as contemplated.

42. That the breach of contract by Defendants caused Plaintiff to sustain damages both out of pocket and in terms of losses associated with her performances in the stage play.

43. The breach of contract by defendants is the proximate cause of the damages sustained by Plaintiff herein and to be proven at trial.

**COUNT V.**
**TORTIOUS INTERFERENCE WITH PROSEPCTIVE ECONOMIC RELATIONS:**

Plaintiff repeats, re-alleges and incorporates herein by reference paragraphs 1-43 set forth herein above as if repeated here verbatim and further complains of the defendants herein as follows:

44. Defendants were aware of the contractual relationship that Plaintiff had with respect to her performance in the stage play of Diary of A Mad Black Woman.

45. Defendants intended, through their blatant actions and other aspects of misconduct, to disrupt, impede, preclude or otherwise interfere with the contractual relationship between the parties.

46. The acts of disruption that was put in place by Defendants did in fact create and otherwise cause damage and harm to the contractual relationship then in place between the parties, and further caused Plaintiff damage going forward in her ability to contract with others to further enhance her professional career development due, in large part, to the "black balling" of Plaintiff's name and reputation in the entertainment industry, of which Defendant has a historic reputation of doing, and the power to easily achieve.

47. The wrongful, fraudulent, and intentional acts of misconduct that disrupted Plaintiff's contract with the Defendants and the preclusion of contracts with others in the entertainment industry was proximately caused by the improper actions of the defendants to Plaintiff's detriment.

48. Plaintiff has sustained severe and irreparable damage as the direct and proximate result of the wrongful acts of the Defendants to be proven at trial.

## COUNT VI.
### INTENTIONAL INFLICTION OF MENTAL ANGUISH:

Plaintiff repeats, re-alleges and incorporates herein by reference paragraphs 1-48 set forth herein above as if repeated here verbatim and further complains of the defendants herein as follows:

49. Defendants, upon information and belief, engaged third parties who are presently unknown to the Plaintiff to engage in a series of actions designed to harass, intimidate, embarrass, and otherwise destroy Plaintiff's image and professional reputation in the entertainment industry.

50. These actions took place over an extended period which Plaintiff has been forced to refute and otherwise defend herself from the barrage of false accusations and outright mendacious assertions that have caused extensive to her professional standing and reputation in the entertainment industry.

51. The deplorable acts undertaken by Defendants have been intentionally undertaken and constitute extremely outrageous behavior that was recklessly put in motion for the

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 12

specific purpose to cause and did, in fact cause, Plaintiff to suffer severe emotional distress, mental trauma, anguish, humiliation and embarrassment.

52. That there was not then, nor is there presently any legitimate basis for the actions that Defendants took and deployed against the Plaintiff other than to feed their own twisted sense of pleasure in subjecting Plaintiff to humiliating embarrassment and destroying her upward career trajectory and establishment of her professional credentials in the entertainment industry.

53. Defendants' deplorable actions are the proximate cause of the mental anguish, embarrassment, and emotional distress that Plaintiff has been subjected to for an extended period of time.

54. Plaintiff has been egregiously damaged as the direct result of the Defendants' nefarious and insidious misconduct.

**WHEREFORE,** Plaintiff prays for judgment against the Defendants, each and every one of them as follows:

1. That Process issue and this Court exert personal jurisdiction over each defendant.
2. That Plaintiff be granted a judgment against the Defendants on Count I of this Complaint in an amount not less than Ten million ($10,000,000) dollars;
3. That Plaintiff be granted a judgment against the Defendants on Count II of this Complaint in an amount not less than Ten million ($10,000,000) dollars;
4. That Plaintiff be granted a judgment against the Defendants on Count III of this Complaint in an amount not less than Ten million ($10,000,000) dollars;

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 13

5. That Plaintiff be granted a judgment against the Defendants on Count IV of this Complaint in an amount not less than Ten million ($10,000,000) dollars;

6. That Plaintiff be granted a judgment against the Defendants on Count V of this Complaint in an amount not less than Ten million ($10,000,000) dollars;

7. That Plaintiff be granted a judgment against the Defendants on Count VI of this Complaint in an amount not less than Ten million ($10,000,000) dollars;

8. That given the careless egregiously severe and intentionally reckless misconduct exhibit by the Defendants that Plaintiff prays for punitive damages in an amount at least ten (10) times the amount of damages sought on each claim for relief set forth herein;

9. Plaintiff further seeks costs for prosecution of this action and attorney fees awarded her; and

10. 10. All such other relief that this Court deems just and proper.

11. Plaintiff Requests Trial By Jury of all factual issues.

Dated this ___ day of March 2024

Respectfully submitted,

**LAW OFFICE OF ROBERT R. PARKER, JR., LL. B., LLC**

By: /s/ Robert R. Parker, Jr.
Robert R. Parker, Jr., OSB 216437
Attorney for Plaintiff.
Pro Hac Vice (Pending)

111 SW Fifth Avenue
Suite 3150
Portland, OR 97204
503-444-3417
robert@robertparkerlawoffices.com

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 14

# EXHIBIT "A"

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 15

# PERFORMANCE AGREEMENT

Agreement made this 3rd day of January, 2001 between Marvalous Music (hereinafter referred to as "representative") representing Marva King (hereinafter referred to as "Artist") and Arthur Primas as Peachez, Inc. (hereinafter referred to as "Purchaser")

The PURCHASER hereby engages ARTIST to perform the engagement hereinafter provided upon all the terms and conditions herein set forth, including those hereof entitled "Additional Terms and Conditions"

1. PURPOSE OF ENGAGEMENT: Performance as actress and vocalist in a musical stage play written by Tyler Perry entitled "Diary of a Mad Black Woman"(hereinafter referred to as "Production"). More specifically appearing in the role of Helen McCarter.

2. DATE(s) OF ENGAGEMENT: January 2, 2001 to June 17, 2001

3. DAYS AND HOURS OF ENGAGEMENT: 8 Performances per week. Each performances shall generally not be longer than 3 hours.

4. REHEARSAL: Rehearsals shall be for two (2) weeks. From January 2, 2001 to January 14, 2001.

5. FULL PRICE AGREED UPON:
   A. REHEARSAL: One Thousand Dollars ($1,000.00) for each week of rehearsal plus Two Hundred Ten Dollars ($210.00) a week Per Diem.

   B. PERFORMANCE FEE: Three Thousand Dollars ($3,000.00) per week for performances plus Two Hundred Ten Dollars ($210.00) a week Per Diem.

All payments shall be paid by certified check, money order, bank draft or cash as follows:

6. DEPOSIT: Five Thousand Four Hundred Twenty Dollars ($5,420.00) NOTE: ($2,000.00 for 2 weeks rehearsal - $420.00 for 2 weeks Per Diem - $3,000.00 one week performance fee)

7. DUE BY: January 8, 2001

8. SEND TO: Marvalous Music
   Wells Fargo Bank
   Canoga Park, California
   ABA#: 121000248        ACCOUNT#: 0443331764

PURCHASER: Arthur Primas for PEACHEZ                MARVALOUS MUSIC
                                                    Marva King

_____                          _____
Signature                                          Signature

THE ABOVE SIGNATURES CONFIRM THAT THE PARTIES HAVE READ AND APPROVE EACH AND ALL OF THE "ADDITIONAL TERMS AND CONDITIONS" SET FORTH WITH THE AGREEMENT.

# ADDITIONAL TERMS AND CONDITIONS

## TERM OF AGREEMENT

The term of this agreement shall be for the length on the face of the agreement with a option to re-negotiate the overall terms at six week increments throughout the length of the agreement.

## USE OF NAME AND LIKENESS

ARTIST hereby gives PURCHASER the expressed consent to utilize ARTIST's approved name, likeness, photographic image, audible voice or video likeness strictly for the purpose of promoting and marketing the musical stage play "Diary of a Mad Black Woman". Purchaser nor Production shall use ARTIST's name, likeness, photographic image, audible voice, video likeness, recordings of any type or any derivative thereof for the purpose of financial profit without the written consent of ARTIST.

## USE OF PRODUCTION NAME

PURCHASER and PRODUCTION hereby gives ARTIST the expressed consent to utilize PRODUCTION's approved name, likeness, photographic images, audible voice(s) or video likeness strictly for the purpose of promoting and marketing of "Mara King". ARTIST shall not use PRODUCTION's name, likeness, photographic image, audible voice, video likeness, recordings of any type or any derivative thereof for the purpose of financial profit without the written consent of PRODUCTION.

## MERCHANDISING

PURCHASER shall provide to ARTIST availability and/or assistance when needed with respect to ARTIST merchandise to be sold at venues performances will take place. Unless restricted by law ARTIST shall have the right to sell ARTIST's merchandise at no cost from PRODUCTION.

## TRANSPORTATION

PURCHASER shall provide ARTIST with all necessary transportation to included but not limited to transportation from hotel to venue and back to hotel; transportation between cities for the duration of the tour and transportation to send ARTIST to a return destination at the end of the tour; transportation to and from promotional appearances. Transportation should be a late model dependable vehicle with a licensed driver that is knowledgeable of the area.

## HOTEL

PURCHASER shall provide ARTIST with Kuwaiti hotel accommodations for the duration of the tour with no cost to ARTIST.

## RECORDING (VIDEO/AUDIO)

ARTIST gives the expressed consent to PURCHASER and PRODUCTION to record video and audio of the PRODUCTION for the sole purpose of promotion and marketing. VIDEO nor AUDIO RECORDINGS shall be used for duplication, manufacturing and/or distribution for sell without the written consent of ARTIST

## PROMOTION AND MARKETING

When necessary ARTIST shall assist PURCHASER with appearances to market and promote PRODUCTION. Appearances must be requested in a minimum three (3) days prior to actual appearance date to give ARTIST ample preparation time for appearance. ARTIST shall be provided with a complete tour schedule of cities that will include dates, times and venue information. ARTIST shall be provided a complete list of radio and television stations for each market that will assist in the marketing and promotion of the PRODUCTION. PURCHASER and PRODUCTION agree that both will work together with ARTIST in the promotion and marketing

EXHIBIT
"B"

PLAINTIFF'S COMPLAINT FOR UNLAWFUL APPROPRIATION OF IMAGE, LIKENESS, VOICE, UNAUTHORIZED COMMERCIAL EXPLOITATION OF NAME, IMAGE, VOICE, SIGNATURE, PHOTOGRAPH OR LIKENESS, FRAUDULENT SPOILAITON OF EVIDENCE, BREACH OF CONTRACT, TORTIOUS INTERFERENCE WITH CONTRACT, INTENTIONAL INTERFERENCE OF MENTAL ANGUISHDEFENDANT'S NAME - 16

Marva King                                                          June 5, 2001
Re: "Diary"

## Letter of intent

Attention Mr. Primas,

      This letter is to confirm our conversation today. I reiterate that I am willing to sign an agreement stating that upon execution of a slightly more formal agreement between you and myself, you can continue production and eventually release said video tape " Diary of a mad black woman" for sale in the U.S. An advance of $5,000.00 will be paid by check immediately by you (Arthur Primas). An advance of $6,000.00 will be counted as a bonus salary for Marva's recognizable progress in the role of Helen Mc Carter in "Diary". A payment of $4,000.000 will be paid by check to Marva on June 24, 2001, plus $210.00 for per diem, by Arthur Primas. Both parties should act in good faith by solidifying the terms agreed upon.

Thank you kindly,

Marva King  *[signature]*
6/5/20/